IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOSEPH M. STILL BURN      \*
CENTERS, INC., f/k/a      \*
PHYSICIANS' MULTISPECIALTY    \*
GROUP, P.C.,      \*
     \*
     Plaintiff,      \*
     \*
     v.      \*      CV 108-090
     \*
LIBERTY MUTUAL INSURANCE    \*
COMPANY,      \*
     \*
     Defendant.      \*

---

**ORDER**

---

Before the Court is Plaintiff's Motion for Leave to File Amendments to Complaint and Defendant's Motion for Summary Judgment. (Doc. nos. 41 & 24.) Upon consideration of the record evidence, the briefs submitted by counsel, and the relevant law, Plaintiff's Motion for Leave to File Amendments to Complaint is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

## I. Background

### A. Outstanding Payments for Medical Services

Plaintiff Joseph M. Still Burn Centers, Inc. ("J.M. Still") is an independently operated arm of Doctors

Hospital of Augusta, which exclusively provides specialized burn care in Augusta, Georgia. (Bennett Aff. ¶ 12.) Prior to the filing of the instant lawsuit, forty-seven (47) individuals employed by employers insured with workers compensation insurance policies issued by Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), were injured in separate incidents outside the state of Georgia and transferred to J.M. Still's burn facility in Augusta, Georgia.[1]  (Id. ¶¶ 4, 5; Doc. no. 31, Ex. 1.)

It is Plaintiff's standard operating procedure, in regard to obtaining admission information on workers' compensation claimants, to call the injured employee's insured employer.  If Plaintiff is unable to reach the employer, Plaintiff often calls the insurer directly to verify the patient's workers' compensation claim status. (Hicks Aff. ¶ 7.)   Here, Plaintiff obtained mailing addresses, claim numbers, the insurance adjusters' names, and telephone numbers from the burn victims' employers or Defendant Liberty Mutual for each individual claim,

---

[1] The actual number of individual claims appears to be in dispute. Plaintiff has provided an affidavit stating, "The Joseph M. Still Burn Centers, Inc., treated every Liberty Mutual claimant listed on Exhibit '1' . . . ."  (Bennett Aff. ¶ 6.)   There are forty-seven (47) individuals listed in Exhibit 1.  (Doc. no. 31, Ex. 1) In Defendant's Brief in Support of Defendant's Motion for Summary Judgment, Defendant states thirty-nine individual claimants are involved in this case. (Doc. no. 24, at 1.)  On this motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, and therefore finds that there are forty-seven (47) claims in dispute.

demonstrated by the fact that all such information was entered into Plaintiff's computer system. (Id.)

Plaintiff treated all forty-seven burn victims and submitted appropriate medical records and bills to Defendant. (Bennett Aff. ¶ 6.) At all times, Plaintiff expected complete payment for its services. (Id. ¶ 14.) Throughout treatment—and after treatment—Plaintiff and Defendant occasionally communicated with each other regarding the workers' compensation claimants. (Id. ¶¶ 10-11; Hicks Aff. ¶¶ 6-10.) Ultimately, Defendant paid Plaintiff in accordance with the Georgia Workers' Compensation Medical Fee Schedule. (Insco Aff. ¶ 3.) These payments were less than what Plaintiff had demanded in its bills to Defendant. (Bennett Aff. ¶ 7.)

## B. Procedural History

Plaintiff filed the instant action against Defendant Liberty Mutual to collect upon payments for individual bills for services rendered to workers' compensation claimants employed by employers insured with workers' compensation insurance policies issued by Defendant. (Doc. no. 31, at 4-5; Compl. ¶¶ 25, 30.) Plaintiff originally filed the captioned case in the Superior Court of Richmond County on June 5, 2008. (Doc. no. 1.) On July 7, 2008, Defendant filed a Notice of Removal with this Court

3

pursuant to 28 U.S.C. § 1446(b) based upon the complete diversity of citizenship between the parties and an amount in controversy that exceeded seventy-five thousand dollars ($75,000).  (Id.)

In its original Complaint, Plaintiff asserts the following causes of action: breach of contract and promissory estoppel.  (Compl. ¶¶ 23-30.)  Under "Count One," Plaintiff's "Breach of Contract" claim, Plaintiff alleges that "Liberty Mutual has wrongfully refused to make payment for the medical services provided" and has, therefore, breached "its agreement to pay for medical services of its insureds to the Plaintiff."  (Compl. ¶¶ 24, 25.)  Regarding Plaintiff's promissory estoppel claim under "Count Two," Plaintiff alleges Defendant violated O.C.G.A. § 13-3-44(a) by making "representations and promises to the Plaintiff during the admission of its insureds for medical care and treatment that it would pay for their services," which Plaintiff relied on to its detriment.  (Compl. ¶¶ 27-29.)

On August 1, 2008, the Honorable W. Leon Barfield, United States Magistrate Judge, issued a scheduling order pursuant to Federal Rule of Civil Procedure 16(b) and the Local Rules of the Court.  (Doc. no. 7.)  The order set forth the scheduling deadlines for this case, including a

4

deadline for the filing of all motions to amend or add parties. (Id.) The scheduling order has since been amended, but the deadline for filing motions to amend the pleadings, September 5, 2008, has remained in full force and effect. (Doc. no. 18.) On December 1, 2008, this Court granted the parties' most recent motion to amend the scheduling order and set forth the final pre-trial deadlines: discovery was ordered to end on April 1, 2009, and all civil motions, excluding motions in limine, were ordered to be filed by April 22, 2009. (Id.)

On March 6, 2009, Defendant Liberty Mutual filed a motion for summary judgment that is, in large part, the subject of this Order. (Doc. no. 24.) On March 31, 2009, Plaintiff filed its response to Defendant's motion,[2] and approximately three weeks later, on April 22, 2009, Plaintiff filed a Motion for Leave to File Amendments to Complaint. (Doc. nos. 31, 41.) In its motion, Plaintiff requests the Court's permission to supplement its Complaint with claims for *quantum meruit*, pursuant to O.C.G.A. § 9-2-7, and breach of contract as to a third party beneficiary, pursuant to O.C.G.A. § 9-2-20. (Doc. no. 41, Ex. 2.)

---

[2] Plaintiff attempted to file its Response to Defendant's Motion for Summary Judgment on March 30, 2009, but all pages in the electronic pleadings transmission were blank. The response was properly filed the following morning, on March 31, 2009.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  How to carry this burden depends on who bears the burden of proof at trial.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-

6

movant's case.   See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).   Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.   Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam).   A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient.   Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment."   Id.   When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden.   If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated."   Fitzpatrick, 2 F.3d at 1116.   If the movant shows an absence of evidence on a material fact,

the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 27.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. DISCUSSION

**A. Plaintiff's Motion for Leave to File Amendments to Complaint**

"[W]hen a motion to amend is filed after a scheduling order deadline, [Federal Rule of Civil Procedure] 16 is the proper guide for determining whether a party's delay may be excused." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 n.2 (11th Cir. 1998). Rule 16(b)(4) states, "A schedule may be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "The good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 Advisory Committee's Note).

> The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.

Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 n.3 (11th Cir. 2009).

The United States Court of Appeals for the Eleventh Circuit has further stated:

> It is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid

9

> an impending adverse summary judgment.
> Furthermore, it is not an abuse of discretion for
> a district court to deny a motion for leave to
> amend following the close of discovery, past the
> deadline for amendments and past the deadline for
> filing dispositive motions. . . . [I]n order to
> ensure the orderly administration of justice,
> [the court] has the authority and the
> responsibility to set and enforce reasonable
> deadlines.

Lowe's Home Ctrs., Inc. v. Olin Corp., 313 F.3d 1307, 1315

(11th Cir. 2002) (citations omitted).

In the instant case, Plaintiff filed its motion to amend more than seven months after the applicable deadline set forth in the scheduling order and nearly a month after the end of discovery. At the time of filing, nearly two months had passed since Defendant filed its Motion for Summary Judgment and nearly a month had passed since Plaintiff filed its response, which specifically referenced the particular claims Plaintiff now wishes to include in its Complaint.

Given the timing of this Motion, Federal Rule of Civil Procedure 16 is the "proper guide for determining whether [Plaintiff's] delay may be excused," Sosa, 133 F.3d at 1418, and, therefore, the appropriate inquiry is whether Plaintiff has shown good cause for the delay in filing its motion. Fed. R. Civ. P. 16(b)(4).

Plaintiff's sole articulated excuse for its delayed filing is that Liberty Mutual's workers' compensation insurance policies were not produced until March 26, 2009, "just in time to respond to Defendant's Motion for Summary Judgment." (Doc. no. 41, at 3.)  According to Plaintiff, Defendant's delay was in contravention of Federal Rule of Civil Procedure 26(a)(1)(A)(iv).

Plaintiff misconstrues the plain text of Rule 26(a)(1)(A)(iv).  Rule 26(a)(1) addresses the initial disclosures required at the outset of a lawsuit; specifically, Rule 26(a)(1)(A)(iv) states that a party is required to submit "any insurance agreements under which an <u>insurance business</u> may be liable to <u>satisfy all or part of a judgment in the action</u> or to indemnify or reimburse for payments made to <u>satisfy the judgment</u>." Fed. R. Civ. P. 26(a)(1)(A)(iv) (emphasis added).  Defendant Liberty Mutual asserts that it is "self-insured" (doc. no. 44, at 3) and no evidence has been provided to the Court to show that any "insurance business" other than Liberty Mutual would be obligated to satisfy any part of a judgment against it.

Because Liberty Mutual was not required to submit its actual workers' compensation insurance policies pursuant to Rule 26(a)(1)(A)(iv), the proper procedure for obtaining these policies was to make a discovery request.  Defendant

11

points out—and Plaintiff does not dispute—that such a request was not made until February 26, 2009, nearly five and a half months after the deadline for the filing of all motions to amend. (Id.) Plaintiff received the requested insurance policies within one month of its request (doc. no. 45, at 5), and yet still did not file a motion to amend for nearly a month. (Doc. no. 41.) Beyond citing Rule 26(a)(1)(A)(iv), Plaintiff provides no explanation for its substantial delay.

Plaintiff states in its Complaint, "From January 1, 2002, to the present, Liberty Mutual issued various workers' compensation policies to Employers outside the State of Georgia, covering their employees for medical benefits in the event they are injured on the job and require care and treatment from a medical provider." (Compl. ¶ 9.) Based on this allegation, Plaintiff was clearly aware of the potential existence of these workers' compensation policies. Nevertheless, Plaintiff waited for months to request their production. By the time Plaintiff filed its request for production of the workers' compensation policies, five months had passed since the deadline for filing motions to amend. Furthermore, the "essential information" pulled from these policies, allegedly spurring the filing of Plaintiff's motion to

amend, is nothing more than boilerplate workers' compensation policy language stating that Liberty Mutual is "liable to any person entitled to benefits" and "those persons may enforce [Liberty Mutual's] duties." (Doc. no. 45, at 5.)

"[I]n order to ensure the orderly administration of justice, [this Court] has the authority and the responsibility to set and enforce reasonable deadlines." Lowe's Home Ctrs., 313 F.3d at 1315. Not only does this Court suspect that Plaintiff had "full knowledge of the information with which it seeks to amend its complaint before the deadline passe[d]," but also finds that, at the very least, "[P]laintiff's failure to seek the information it need[ed] to determine whether an amendment [was] in order" demonstrates a lack of diligence sufficient to support the denial of Plaintiff's motion. See Southern Grouts, 575 F.3d at 1241. Therefore, the Court **DENIES** Plaintiff's Motion for Leave to File Amendments to Complaint, having found that Plaintiff has failed to show good cause as to why the deadline for filing motions to amend could not be met in this instance.

## B. Defendant's Motion for Summary Judgment

### i. *Breach of Express Contract*

Count One of Plaintiff's Complaint alleges "Breach of Contract," due to Defendant's "breach of its agreement to pay for medical services of its insureds" through its wrongful refusal "to make payment for the medical services provided to its various insureds as demanded." (Compl. ¶¶ 23-25.) Defendant, citing O.C.G.A. § 13-3-1, argues in its brief in support of its Motion for Summary Judgment that any alleged contract "fails for lack of specificity or lack of the essential terms necessary to make such a contract enforceable." (Doc. no. 24, at 7.) Specifically, Defendant directs the Court's attention to the fact that there is nothing in the record establishing "what the contract was, how the doctors were to be paid, [and] what mechanism or schedule was to be utilized." (Id.)

Plaintiff responds by arguing that "Defendant's use of O.C.G.A. § 13-3-1, *et seq.*, and the case law interpreting it is misplaced." (Doc. no. 31, at 4.) Plaintiff contends that Defendant has erred by focusing on O.C.G.A. § 13-3-1 instead of "the controlling provisions of Georgia Law, O.C.G.A. § 9-2-7 (Implied Contracts) and § 9-2-20(a) (Third Party Beneficiary of a written contract)." (Id.) By all appearances, including Plaintiff's own statements,

14

Plaintiff never intended to assert a claim for breach of express contract in the first place. Nevertheless, even though Plaintiff has implicitly denied that it is asserting a claim pursuant to O.C.G.A. § 13-3-1, to the extent Plaintiff is asserting such a claim, Defendant's Motion for Summary Judgment on such a claim should be granted.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Furthermore, under Georgia law, price is an essential element of a contract and "an alleged contract on which there is no firm agreement as to the price is unenforceable." BellSouth Adver. & Publ'g Corp. v. McCollum, 209 Ga. App. 441, 444 (1993); see also Green v. Johnson Realty, Inc., 212 Ga. App. 656, 659 (1994) (upholding trial court's grant of summary judgment in favor of defendant on plaintiff's breach of contract claim where evidence showed "there was never an agreement as to how much defendant would be paid" for providing service); King v. State Farm Mut. Auto. Ins. Co., 117 Ga. App. 192, 194 (1968) (finding that when insurer allegedly told insured that "at the appropriate time plaintiff would be compensated in full for his personal injuries" resulting

15

from car accident, no contract was formed due to lack of essential elements necessary for contract). Finally, "A contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain. In addition, the party asserting the existence of a contract has the burden of proving its existence and its terms." Home Depot U.S.A., Inc. v. Miller, 268 Ga. App. 742, 744 (2004) (quoting Mooney v. Mooney, 245 Ga. App. 780, 782 (2000)).

Nowhere in Plaintiff's pleadings or in its responses to Defendant's Motion for Summary Judgment, does Plaintiff allege or provide facts to support the notion that a price or payment terms were ever agreed upon by both parties. Susan J. Bennett, the Manager of J.M. Still, states that Plaintiff "treated every Liberty Mutual claimant . . . and submitted appropriate medical records and bills for complete payment to Liberty Mutual. After submission of these records to Liberty Mutual, [Plaintiff] received incomplete payment on those accounts . . . ." (Bennett Aff. ¶ 6.) Bennett continues, "Liberty Mutual stated they paid according to the Georgia Fee Schedule." (Id. ¶ 8.) While recounting the treatment and billing procedures, however, Ms. Bennett does not state that Plaintiff and Defendant agreed to a price for the medical services provided to the burn victims nor does she state that

16

Defendant agreed to pay anything at all.  Rather, Plaintiff simply billed Defendant one price and Defendant paid Plaintiff another.

The evidence of record establishes little more than that, at some point, Liberty Mutual *may* have, in *some* cases, verified that the claimants were insured by Liberty Mutual and *may* have, in special cases, pre-certified an individual procedure.  (Hicks Aff. ¶¶ 7, 9.)  There is no evidence, however, showing that a price for any medical procedure or treatment was agreed upon before or after the burn victims were treated nor has any evidence been produced demonstrating that there was any agreement regarding when or how Plaintiff was to be paid.  See King, 117 Ga. App. at 194 ("[T]here was no allegation as to when would be the proper and appropriate time [for payment] nor as to what sum would constitute full compensation for the injuries.  Therefore, lacking these essential elements the alleged contract was too indefinite to be enforceable.").  There is also no evidence in the record setting forth *any* specific terms of an agreement.  Plaintiff fails to point to any specific instance, in the forty-seven different burn cases, in which Defendant requested or approved a particular procedure or treatment or agreed to pay a particular price.

17

Having found that Plaintiff has failed to demonstrate the presence of certain essential elements required to create an express contract, to the extent Plaintiff is attempting to assert a claim for breach of express contract pursuant to O.C.G.A. § 13-3-1, the Court **GRANTS** Defendant's Motion for Summary Judgment on this claim.

ii.   *Promissory Estoppel*

In Count Two of the Complaint, Plaintiff asserts a claim of promissory estoppel.   According to Plaintiff, "Liberty Mutual made representations or promises to the Plaintiff during the admission of its insureds for medical care and treatment that it would pay for their services." (Compl. ¶ 28.)   Plaintiff then allegedly relied on these promises to its detriment.   (Compl. ¶¶ 29-30.)   Defendant, however, asserts that Plaintiff has failed to present or point to any evidence in the record supporting the contention that a promise or representation was made regarding payment for medical services.   (Doc. no. 24, at 8-10.)   Specifically, Defendant contends that there is "no evidence that Liberty Mutual manifested an intention to pay the full amount of the Plaintiff's charges."   (Id. at 10.)

"To prevail on a promissory estoppel claim, a plaintiff must demonstrate that (1) the defendant made certain promises, (2) the defendant should have expected

18

that the plaintiff would rely on such promises, and (3) the plaintiff did in fact rely on such promises to his detriment." Doll v. Grand Union Co., 925 F.2d 1363, 1371 (11th Cir. 1991) (applying Georgia law); see also O.C.G.A. § 13-3-44(a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). "An essential element of a claim of promissory estoppel is that the defendant made certain promises to the plaintiff. And, while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." Mooney, 245 Ga. App. at 783.

While Plaintiff may assert in its Complaint that Defendant "made representations or promises to the Plaintiff during the admission of its insureds for medical care and treatment that it would pay for these services," Plaintiff has failed to point to or provide evidence in the record showing any such promise or representation. (Compl. ¶ 28.) In response to Defendant's Motion for Summary Judgment, Plaintiff has provided the Court with several affidavits—none of which identify a single promise or

19

representation made by Defendant regarding a single one of the forty-seven cases upon which this action has been brought.   For example, J.M. Still's Admission Director states in her affidavit, "It is my standard procedure for obtaining admission information on Liberty Mutual claimants, to call the insured employer.  If I am unable to reach the employer, I will call Liberty Mutual to verify the workers' compensation claim status."  She goes on to say, "In the event a Liberty Mutual's claimant had to return to the Joseph M. Still Burn Centers, Inc., for additional surgical procedures, following discharge, our Pre-Certification Department would call to get authorization for that procedure."  These facts simply fail to show any promise—"an essential element of a claim for promissory estoppel"—was made in the specific cases sued upon.  <u>Mooney</u>, 245 Ga. App. at 783.  At the very most, the evidence demonstrates that, in some of the cases, there were unspecific communications between Plaintiff and Defendant regarding insurance claims.   (Doc. no. 31, Ex. 3.)

Assuming, *arguendo*, that Defendant made a promise or promises, there is no evidence setting forth the substance of the promise or promises with any degree of particularity.  As stated above, for purposes of promissory

estoppel, "while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." Mooney, 245 Ga. App. at 783. The evidence fails to show what services Defendant promised to pay for or how much Defendant promised to pay; to the extent any promise could be inferred, it would lack "sufficient particularity to enforce [a] commitment." Id.

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's promissory estoppel claim is **GRANTED**.

> ### iii. Applicability of *Gilmour* to Plaintiff's Remaining Claims—Quantum Meruit and Third Party Beneficiary

Plaintiff asserts in its Brief Opposing Defendant's Motion for Summary Judgment that its cause of action for breach of contract "is grounded in three well established features of Georgia law": implied contracts under O.C.G.A. § 9-2-7, a third party beneficiary claim under O.C.G.A. § 9-2-20, and promissory estoppel under O.C.G.A. § 13-3-44(a). (Doc. no. 31, at 9.) Defendant responds, in its Reply Brief, "[T]he Plaintiff has asserted two brand new theories of recovery, neither of which are raised in the complaint. The Plaintiff now contends it has an 'implied contract' with Liberty Mutual under O.C.G.A. § 9-2-7, and

21

that the Plaintiff is a third party beneficiary of the Defendant's workers' compensation policies." (Doc. no. 35, at 2.)   For these reasons, Defendant urges this Court not to consider Plaintiff's "new claims." (Id. at 4.)

In Gilmour v. Gates, McDonald & Co., 382 F.3d 1312 (11th Cir. 2004), the Eleventh Circuit states the following:

> In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002), the Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. Indeed, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of umeritorious claims." Id. Efficiency and judicial economy require that the liberal pleading standards under Swierkiewicz and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.

Id. at 1314-15.

In Gilmour, the plaintiff brought suit based upon the following causes of action: negligent misrepresentation, promissory estoppel, bad faith, negligence *per se*, infliction of emotional distress, and tortious interference with contract.   Id. at 1314.   In response to the

22

defendant's motion for summary judgment, the plaintiff withdrew every claim except for the bad faith and negligence *per se* claims, the tortious interference with contract claim, and the claim for attorney's fees.   Id. The defendant also asserted a new claim based on a "breach of duty" under contract law arising from a contract that was not the subject of any other claim.   Id.   The court held that the "[defendant] had no notice of a contract claim based on the tort claims set forth in the complaint. . . . The proper procedure for [Plaintiff] to assert a new contract claim [would have been] to seek to amend her complaint." Id. at 1315.

     The threshold issue here is whether Plaintiff has raised new legal claims for the first time in response to the summary judgment motion.   The Court concludes that Plaintiff has not raised a new claim by seeking *quantum meruit* pursuant to an implied contract theory; however, Plaintiff has raised a new claim by asserting, for the first time on summary judgment, a third party beneficiary claim.   The Gilmour case is, therefore, only applicable to the third party beneficiary claim, and no amendment is necessary in order for this Court to address Plaintiff's claim for *quantum meruit*.

(a)   *Quantum Meruit*

The Court recognizes that Plaintiff's Complaint is somewhat ambiguous and does not go so far as to specify the statutes under which it has brought this suit; nevertheless, this does not mean that Plaintiff has failed to assert a claim for *quantum meruit*. Regarding Plaintiff's claim for *quantum meruit*, this is not a case like Gilmour in which the plaintiff had no notice of an entirely new claim raised in response to summary judgment. See id. at 1315 ("[D]efendant had no notice of a contract claim based on the tort claims set forth in the complaint."); see also Snelling v. Stark Props., Inc., No. 5:05-cv-46, 2006 WL 2078562, *13 (M.D. Ga. July 24, 2006) (distinguishing Gilmour and finding "that the Court cannot say as a matter of law" that the plaintiff was not entitled to offer proof on her claim). Here, not only can the Complaint be read to be asserting a claim for *quantum meruit* based upon the allegation that Defendant breached an implied contract with Defendant, but any alleged ambiguity in the Complaint was clarified over the course of discovery.

Defendant characterizes Plaintiff's Complaint as asserting a claim for breach of an express contract between Plaintiff and Defendant, but the Complaint does not

24

explicitly allege that there was a written or oral contract between the two parties in this case. Furthermore, on at least one occasion, when Defendant attempted to make Plaintiff identify the "express agreement" allegedly set forth in the Complaint, Plaintiff made clear it was asserting a claim for *quantum meruit*. When Defendant asked Plaintiff in an interrogatory to describe exactly what contracts it had with Liberty Mutual, Plaintiff responded, "The agreement for payment of medical services by Liberty Mutual arises in the regular and usual course of business with the Plaintiff." (Doc. no. 25, Ex. 1 at 4-6.) Plaintiff then set forth the general process by which Liberty Mutual insureds are admitted to J.M. Still and how Plaintiff goes about obtaining payment for services provided to those insureds. (Id.) Even assuming that Plaintiff's Complaint does not make its claim for *quantum meruit* completely clear, its answer to this interrogatory demonstrates that Plaintiff's breach of contract claim does not involve an express contract, but rather is a claim for *quantum meruit* based upon a theory that Defendant breached an implied contract.

Moreover, this Court also cannot overlook the fact that Defendant originally addressed Plaintiff's claim for breach of implied contract in its Motion for Summary

25

Judgment. (Doc. no. 24, at 7-8.) The fact that Defendant felt compelled to address Plaintiff's claim for breach of implied contract is strong evidence that Defendant was put on sufficient notice of Plaintiff's claim such that its claim for *quantum meruit* should not be considered a "new claim." Thus, the Court will now address the merits of this claim.

Plaintiff seeks *quantum meruit* for breach of an implied contract pursuant to O.C.G.A. § 9-2-7, which states in part: "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Based on this statute, the Supreme Court of Georgia has established the following essential elements regarding a claim for *quantum meruit*: "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." Amend v. 485 Props., 280 Ga. 327, 329 (2006).

Defendant contends that "no implied contract is applicable where the acceptance of the work performed appears to be for the benefit of another." (Doc. no. 24, at 8.) Implicit in this argument is the contention that

26

Defendant Liberty Mutual did not receive any benefit as a result of Plaintiff's performance of medical treatment on the employees of Defendant's insureds; or, in other words, the medical services performed by Plaintiff had no value to Defendant.   This argument is made explicit in Defendant's Reply Brief: "Liberty Mutual has received no benefit, and consequently, this Statute [O.C.G.A. § 9-2-7] on implied contract has no application to Liberty Mutual."   (Doc. no. 35, at 4.)

Plaintiff counters by arguing that "[t]he medical services benefitted . . . Liberty Mutual who had both a State Law obligation to pay medical benefits as well as a contractual one to its insured."   (Doc. no. 40, at 7.) Plaintiff goes on to state:

> Liberty Mutual actually was the recipient of the medical benefits from the Plaintiff to treat its insureds' employees.   Of course it did not receive medical treatment.   Liberty Mutual's conduct of partial payment to the Joseph M. Still Burn Centers, Inc., was done to satisfy both State Law as well as its contract obligations under its regulated workers' compensation insurance contract.   This benefit was acknowledged by Liberty Mutual when it accepted the bills and paid the Joseph M. Still Burn Centers, Inc., under a Georgia Fee Schedule.

(Id. at 8.)

"Quantum meruit is not available when there is an express contract; however, if the contract is void, is

27

repudiated, or can only be implied, then quantum meruit will allow a recovery if the work or service was accepted and *if it had value to the recipient*." Watson v. Sierra Contracting Corp., 226 Ga. App. 21, 28 (1997) (emphasis added). Under Georgia law, for any claim based on *quantum meruit*, a plaintiff must show that it performed "services valuable *to the defendant* and that the defendant accepted those services." Langford v. Robinson, 272 Ga. App. 376, 379 (2005). While normally issues of benefit and value of services are reserved for jury determination, where the "facts conclusively show by plain, palpable and undisputed evidence" the benefit or lack of benefit, or value or lack of value, conferred upon an alleged recipient of services, the case can be properly resolved on summary judgment. Sosebee v. McCrimmon, 228 Ga. App. 705, 708-09 (1997).

To date, Plaintiff has identified no evidence upon which a reasonable juror could conclude that it conferred valuable services upon Defendant. This Court simply cannot accept Plaintiff's conclusory assertion that "Liberty Mutual actually was the recipient of the medical benefits from the Plaintiff to treat its insureds' employees." Clearly, Plaintiff's services were valuable to the individual burn victims treated, but those individuals are not parties to this suit. The only defendant in this suit

is Liberty Mutual, and the only evidence this Court has before it regarding the existence of any benefit or value conferred upon Liberty Mutual is evidence that Liberty Mutual was billed for services and subsequently made payments to Plaintiff.  (Bennett Aff. ¶ 7.)

The fact that Liberty Mutual made payments for medical services performed on an employee of its insured—by itself—does not establish Plaintiff performed services valuable *to Defendant*.  Moreover, in this particular case, all evidence and Plaintiff's own arguments on this point (doc. no. 40 at 8) tend to show that payments were made, not because Defendant valued the services or received a benefit from the medical services provided, but because Defendant believed it had a statutory and/or contractual obligation to pay.  (Insco Aff. ¶ 3.)

Plaintiff uses Defendant's alleged statutory and/or contractual obligation to pay Plaintiff to show the conferred medical services were somehow beneficial to Defendant.  Assuming, *arguendo*, Defendant had such an obligation to pay Plaintiff for the medical services provided to the employees of its insureds, the Court fails to see how this has any bearing on whether or not those services were valuable to Defendant.  If Plaintiff's performance of medical services provided anything to

Defendant, it was "a ripened obligation to pay its insured—which could hardly be called a benefit." <u>Travelers Indem. Co. of Conn. v. Losco Group, Inc.</u>, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001).

Moreover, Plaintiff has failed to provide this Court with sufficient evidence, such that a reasonable juror could conclude, that any such statutory obligation to pay exists.[3]  All that can be found in the record is evidence that the injuries occurred outside the State of Georgia. (Bennett Aff. ¶ 4.)  Plaintiff has failed, for example, to provide or point to any evidence showing where the individual injuries occurred, where the contracts of employment were made, where the insured employers were located, and whether or not the contracts for employment were expressly for service outside of the state.[4]  <u>See</u> O.C.G.A. § 34-9-242 ("In the event an accident occurs while the employee is employed elsewhere in this state . . . the

_____

[3] Of note, Plaintiff's argument that there existed a statutory obligation to pay for the services contradicts a fundamental premise of its claim, that "[t]he claims presented . . . [are] not subject to the regulations of the various State Industrial Commissions" and are not "under the jurisdiction of Georgia." (Doc. no. 31, at 3-4.)  To the extent that the Georgia rules and laws governing workers' compensation apply to these claims, Defendant argues it paid in full, and Plaintiff does not appear to dispute this. (Doc. no. 35, at 6; Insco Aff. ¶ 3.)

[4] Plaintiff also largely fails to provide or point to any evidence showing where the burn victims resided at the time of the injuries. Plaintiff provided the Court with "Patient Face Sheets" for seven (7) of the forty-seven (47) patients which are the subject of this lawsuit. These sheets include an address under each patient's name, which the Court can only assume identifies their residences.

employee or his dependents shall be entitled to compensation if the contract of employment was made in this state and if the employer's place of business or the residence of the employee is in this state unless the contract of employment was expressly for service exclusively outside of the state.")

And to the extent that Plaintiff asserts that Defendant had a contractual obligation to pay, there is no evidence in the record to establish that fact. The only evidence presented to the Court on this issue are three pages of what appears to be a Liberty Mutual insurance policy. There is no evidence establishing that this policy is representative of all the policies at issue in this lawsuit.

Based upon the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in regard to Plaintiff's claim for *quantum meruit*.

(b)   *Third Party Beneficiary Claim*

Unlike Plaintiff's claim for *quantum meruit*, Plaintiff's third party beneficiary claim is a "new claim" within the meaning of Gilmour, such that an amendment is required in order for the claim to be addressed on summary judgment. Nowhere in the Complaint does Plaintiff state the words "third party" or "third party beneficiary," or in

31

any way indicate that it is suing upon the workers'
compensation policies issued by Defendant Liberty Mutual to
its insureds.  The complete lack of notice of a third party
beneficiary claim is further evidenced by the fact that
Defendant did not address such a claim in its initial
motion for summary judgment.  While the Complaint refers
once to the workers' compensation policies, no claim could
reasonably be drawn from this single statement of fact and,
further, "[l]iberal pleading does not require that, at the
summary judgment stage, defendants must infer all possible
claims that could arise out of facts set forth in the
complaint."  Gilmour, 382 F.3d at 1315.

Not only does the Complaint provide no real notice of
a third party beneficiary claim, but there is also no
conceivable way to read Plaintiff's "breach of contract"
claim as simultaneously asserting both a claim for breach
of implied contract and a third party beneficiary claim.
The two claims refer to entirely different "agreements,"
one of which is express and one of which is implied.
Moreover, a plaintiff cannot assert a claim for "breach of
contract," and then wait until summary judgment to inform
the defendant as to whether it is asserting a claim for
breach of implied contract, a third party beneficiary
claim, or promissory estoppel, without ever having amended

32

its complaint; to permit this method of asserting claims,
would be to ignore the spirit and clear language of
<u>Gilmour</u>: "Efficiency and judicial economy require that the
liberal pleading standards . . . are inapplicable after
discovery has commenced.  At the summary judgment stage,
the proper procedure for plaintiffs to assert a new claim
is to amend the complaint . . . ."  <u>Id.</u> at 1315.

Based on the foregoing reasons, the Court concludes
that Plaintiff has improperly asserted a new third party
beneficiary claim in its Response to Defendant's Motion for
Summary Judgment.  The proper procedure for Plaintiff to
assert a new claim is to timely seek to amend the
complaint.  In light of Plaintiff's failure to do so,
Plaintiff's third party beneficiary claim cannot be
considered on summary judgment.

Even if this Court were to consider a third party
beneficiary claim, Plaintiff's claim would fail as a matter
of law.  Plaintiff asserts that under O.C.G.A. § 9-2-20(b),
it is a third party beneficiary of Liberty Mutual's
workers' compensation policies.  (Doc. no. 31, at 15.)
Georgia Code § 9-2-20(b) states the following:  "The
beneficiary of a contract between other parties for his
benefit may maintain an action against the promisor on the
contract."  In order to maintain a contract action as a

third party beneficiary, the third party must "show from the face of the contract that it was intended to benefit [the plaintiff]." <u>Gilmour</u>, 382 F.3d at 1315; <u>see also</u>, <u>Kaiser Aluminum & Chem. Corp. v. Ingersoll-Rand Co.</u>, 519 F. Supp. 60, 72 (S.D. Ga. 1981) ("The law of Georgia has not been anxious to find that parties not in privity can sue under the aegis of the third party beneficiary doctrine. Under Georgia law, a plaintiff must be an intended rather an incidental beneficiary and it must clearly appear from the contract itself that both contracting parties intended to benefit the third party.").

Defendant, in its Reply Brief, asserts that Plaintiff has failed to identify any evidence to support the contention that it was an intended third party beneficiary of Defendant's workers' compensation policies (doc. no. 35, at 5), and the Court agrees. Plaintiff has simply failed to supply or point to any evidence showing that, on the face of the workers' compensation policies, it was an *intended* beneficiary. In support of its third party beneficiary claim, Plaintiff contends that Defendant's workers' compensation policies "all contain compliance language similar to that of the law of Georgia." (Doc. no. 31, at 16.) Plaintiff cites the following language from a Liberty Mutual workers' compensation policy: "We are

34

directly and primarily liable to any person entitled to benefits payable by this insurance.   Those persons may enforce our duties."   (Id.)

Putting aside the fact that the policy provided to the Court is unverified and there is no evidence in the record establishing that this policy is an exact copy of the policies issued in each of the individual cases sued upon, this language fails to provide any evidence that, on the face of the contract, Plaintiff J.M. Still, or any hospital for that matter, is an intended beneficiary of Liberty Mutual's workers' compensation policies.   This is not a case like Vencor Hosps. v. Blue Cross Blue Shield of R.I., 169 F.3d 677 (11th Cir. 1999).   In Vencor, a case which arose under Florida law, a hospital brought a breach of contract suit against a health insurer due to the insurer's failure to fully pay for services allegedly covered by its policy.   Id. at 679-80.   The insurer argued that the hospital could not bring the suit because the policies at issue were between the insurer and the patients, not between the insurer and the hospital.   Id. at 680.   The hospital responded by arguing that it was a third party beneficiary of the insurance contracts and the Eleventh Circuit agreed.   Id.   The Eleventh Circuit's opinion focused specifically on the language set forth in the

35

insurance contract, which stated: "Benefit payments may be paid to the doctor, *hospital* or to you directly at our discretion."   Id. (emphasis added).   Based upon this language, the court of appeals found, "By providing for payment directly to the hospital, the contracting parties showed a clear intent to provide a direct benefit to Vencor (or any other service-providing hospital), and thus Vencor has standing to bring this suit." Id.

Unlike in Vencor, where the word "hospital" appeared directly in the policy, Plaintiff has not identified any language in the contract at issue here indicating a "clear intent to provide a direct benefit" to J.M. Still or any other service-providing hospital.   Nowhere does Liberty Mutual state that it will pay hospitals or doctors directly for their services.   Furthermore, the contracts at issue here are not like the ones in Vencor, which were between an individual and an insurer of medical services; the contracts at issue here cover workers' compensation benefits owed by employers to employees; medical providers are, therefore, more distant beneficiaries in this context.

Plaintiff appears to argue that certain Georgia workers' compensation statutes and rules, when incorporated into the contracts, provide the necessary language to support Plaintiff's claim that it is a third party

36

beneficiary under Defendant's insurance contracts. (Doc.
no. 31, at 18.) However, any attempt by Plaintiff to
invoke these statutes and rules removes the entire basis
for their claim. Plaintiff asserts in its Response to
Defendant's Motion for Summary Judgment: "Nor is [J.M.
Still] subject to the Georgia Fee Schedule because these
claims are not under the jurisdiction of [workers'
compensation law in] Georgia." (Id. at 3.) Based upon
this theory, Plaintiff argues that the payments made by
Liberty Mutual pursuant to the Georgia Workers'
Compensation Medical Fee Schedule were in error. (Id. at
2.) Plaintiff cannot argue both that Georgia workers'
compensation rules do not apply to the claims at issue in
this case and then invoke those same rules to support a
claim as a third party beneficiary. To the extent Georgia
workers' compensation rules apply, Plaintiff appears not to
dispute that Defendant paid in full. Furthermore, as
discussed above, Plaintiff has not provided sufficient
evidence establishing that Georgia workers' compensation
rules and laws apply to the individual burn cases in the
first place.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File Amended Complaint is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.** The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant. The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

ORDER ENTERED at Augusta, Georgia, this ____6th____ day of January, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

38